2016-1372, -1373

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### SECURUS TECHNOLOGIES, INC.,

**Appellant**

v.

### GLOBAL TEL LINK CORPORATION,

**Appellee**

**Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2014-00749 and IPR2014-00493**

## BRIEF FOR APPELLEE

Byron L. Pickard
Lori A. Gordon
Michael B. Ray
Michael D. Specht
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellee,*
*Global Tel Link Corporation*

Dated: May 16, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Securus Technologies, Inc.          v.     Global Tel Link Corporation

Case No.     16-1372, -1373

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Global Tel Link Corporation          certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.     The full name of every party or amicus represented by me is:

Global Tel*Link Corporation

2.     The name of the real party in interest (Please only include any real party in interest
NOT identified in Question 3. below) represented by me is:

None

3.     All parent corporations and any publicly held companies that own 10 percent of the
stock of the party or amicus curiae represented by me are listed below. (Please list each party
or amicus curiae represented with the parent or publicly held company that owns 10 percent
or more so they are distinguished separately.)
GTEL Holdings, Inc. is the parent company of Global Tel*Link Corporation. GTEL Holdings, in turn, is a wholly
owned subsidiary of GTEL Acquisition Corp., which itself is wholly owned by ASP GTEL Holdco, LLC. And
ASP GTEL Investco, LLC owns the majority of ASP GTEL Holdco's shares.
No publicly held company owns 10% or more of the stock of GTEL Holdings, Inc. or any of its parent companies.

4.  ☒   The names of all law firms and the partners or associates that appeared for the party
        or amicus now represented by me in the trial court or agency or are expected to appear
        in this court (and who have not or will not enter an appearance in this case) are:

Sterne Kessler Goldstein & Fox PLLC: Byron L. Pickard, Lori A. Gordon, Michael B. Ray,
                Ryan C. Richardson

January 12, 2016                              /s/ Byron L. Pickard
          Date                                      Signature of counsel

Please Note: All questions must be answered          Byron L. Pickard
          all counsel via CM/ECF
cc:                                                 Printed name of counsel

Reset Fields

# TABLE OF CONTENTS

RULE 47.5 STATEMENT OF RELATED CASES .................................................1

STATEMENT OF THE ISSUES.......................................................................1

COUNTER-STATEMENT OF THE CASE ...............................................................4

COUNTER-STATEMENT OF THE FACTS ...........................................................4

I.  The '167 and '003 patent claim centralized prison communication systems
    that use Voice over Internet Protocol (VoIP). ................................................4

II. Before the time of the invention, VoIP Networks were well known in the art
    and centralized architectures had been widely implemented in telephone
    networks.........................................................................................................6

III. Prior-art Spadaro disclosed all of the claimed components of the patents on
     appeal and teaches (i) centralizing control functions, and (ii) using VoIP in a
     multi-prison communication system. ...........................................................8

    A.  *Contra* Securus, Spadaro teaches generally centralizing control
        components, not just centralizing the routing, billing, and checking
        PIN functions.....................................................................................11

    B.  *Contra* Securus, Spadaro does not teach that the three-way call detect
        30a and VoIP gateway 26a should be physically separated from the
        other control functions. .....................................................................12

    C.  *Contra* Securus, the presence of a WAN in Spadaro does not suggest
        physical separation of components. ...................................................13

    D.  *Contra* Securus, Spadaro's Server 48 would have been understood to
        intelligently route data.......................................................................14

IV. The Board found that Spadaro renders obvious the challenged claims of the
    '167 and '003 patents...................................................................................15

    A.  *Contra* Securus, the Board found that Spadaro's server 48 receives
        outbound packets from the multiple prison sites. ..............................16

    B.  *Contra* Securus, the patented claims did not motivate Dr. Forys's
        proposed combination. .......................................................................17

    C.  *Contra* Securus, the Board did not entirely ignore a limitation of claim
        9. ........................................................................................................19

    D.  *Contra* Securus, the Board's obviousness rationale for claims 15 and
        16 is not limited to a single sentence. ...............................................19

E.      Securus omits from its Blue Brief that the Board's analysis of claim 21 referred back to its claim 15 analysis because Securus offered the same patentability arguments for claim 21 that it offered for claim 15. ...................................................................................................20

SUMMARY OF THE ARGUMENT ....................................................................20

ARGUMENT ........................................................................................................22

I.      Standards of review. .................................................................................22

II.     The Board did not shift the burden to Securus or require it to prove non-obviousness. .............................................................................................23

    A.      The Board weighed all of the evidence on the obviousness question and found that Global Tel*Link had proven that the challenged claims would have been obvious by a preponderance of the evidence. .........24

    B.      Assuming arguendo the Board shifted the burden to Securus to prove non-obviousness, reversal is not the correct remedy. ........................26

        1.      Securus did not argue or present evidence that the proposed Spadaro combination was inoperable. ......................................27

        2.      Global Tel*Link, supported by expert testimony, showed how Spadaro's server 48 could perform intelligent packet routing. 27

III.    Substantial evidence supports the Board's finding that Spadaro rendered obvious the claimed "call application management system" and the claimed "unauthorized call detection system." ..........................................................28

    A.      Securus's substantial-evidence argument is legally flawed because it improperly limits the inquiry to evidence explicitly cited by the Board and it applies an overly rigid approach that is inconsistent with *KSR*. ...........................................................................................30

    B.      Substantial evidence supports the Board's finding that centralizing Spadaro's three-way call detection 30a system and VoIP gateway 26a with the other control components would have been obvious. ...........31

IV.     The Board's Final Written Decision allows for effective judicial review of its finding that claims 9, 15, 16, and 21 of the '167 patent would have been obvious because the decision shows the evidence relied on and outlines the Board's reasoning. ........................................................................................35

CONCLUSION AND RELIEF SOUGHT ...........................................................40

# TABLE OF AUTHORITIES

**Cases:**

*Consolidated Edison Co. v. NLRB,*
305 U.S. 197 (1938).................................................23

*Consolo v. Federal Maritime Comm'n,*
383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).............23

*In re Gartside,*
203 F.3d 1305 (2000)...........................................23, 30

*In re Mettke*,
570 F. 3d 1356 (Fed. Cir. 2009)...................................22

*In re Translogic Tech., Inc.*
504, F.3d. 1249 (Fed. Cir. 2007) ...................................30

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007)...........................................29, 30

*Synopsys, Inc. v. Mentor Graphics Corp.*,
Nos. 2014-1516 and 2014-1530 (Fed. Cir. Feb. 10, 2016)........35

*Universal Camera Corp. v. NLRB,*
340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).............23, 30

**Other Authority:**

5 U.S. Code § 706 .................................................30

## RULE 47.5 STATEMENT OF RELATED CASES

There have been no other appeals to this Court from these proceedings (now consolidated for this appeal) before the Patent Trial and Appeal Board.

Two other cases may directly affect, or be directly affected by, this Court's decision because they involve one of the patents at issue in this appeal, U.S. Patent No. 7,899,167: (i) *Securus Techs., Inc. v. Global Tel\*Link Corp.*, No. 3:14-cv-4233-K (N.D. Tex.); and (ii) *Securus Techs., Inc. v. Global Tel\*Link Corp.*, No. 3:13-cv-03009-K (N.D. Tex.), now on appeal to this Court, Appeal No. 2016-1506.

## STATEMENT OF THE ISSUES

1. The Board found that combination of the teachings in the prior art Spadaro patent taught the claimed "networking device." In so finding, the Board noted that Securus did not rebut Global Tel\*Link's evidence by showing the proposed Spadaro combination either would have been beyond the level of skill in the art or would yield unpredictable results. The Board also found unpersuasive Securus's rebuttal evidence that Spadaro's server 48 did not perform "intelligent packet routing." Did the Board properly weigh the evidence and decide as a matter of fact that the preponderance of evidence showed that Spadaro taught the claimed "networking device" or did the Board shift the burden to Securus to prove patentability?

2. Securus argues that Global Tel*Link failed to show that Spadaro's server 48 could perform intelligent routing of packets, a function Securus argued was necessary to function in a VoIP system. Spadaro itself discloses that server 48 can be used in a system that functions over VoIP networks to route incoming calls to the correct destination in a multi-prison system. And Global Tel*Link presented expert testimony that a skilled artisan would have understood from Spadaro how server 48 could be used to intelligently route packets. Assuming *arguendo*, that the Board improperly placed the burden for the obviousness issue on Securus, should the Court remand, and not reverse, the case so the Board can decide whether the competing evidence on the intelligent routing-of-packet issue favors Global Tel*Link or Securus?

3. By the time of the invention, centralization of telecommunication network components was wide spread throughout the industry. And prior-art Spadaro expressly taught removing telecommunication-system control functions from individual prison sites so that they could be centralized—a point confirmed by expert-witness testimony. Does substantial evidence support the Board's fact finding that it would have been obvious to centralize Spadaro's three-way call detect 30a and VoIP gateway 26a with its other centralized control functions?

4. In deciding whether claim 9 of the '167 patent would have been obvious, the Board (i) recounted Global Tel*Link's obviousness evidence, (ii) addressed

and rejected Securus's rebuttal arguments, (iii) found that the obviousness combination involved known methods yielding predictable results, and (iv) found that Global Tel*Link's expert witness had credibly shown that the prior art rendered obvious claim 9. Does the Board's Final Written Decision allow for judicial review of this determination?

5. In deciding whether claims 15 and 16 of the '167 patent would have been obvious, the Board (i) made fact findings about the teachings of the prior art, (ii) explained why Securus's rebuttal case was unsuccessful, (iii) construed the claim language according to its plain meaning, and (iv) found, based on the prior-art teachings and the claim language, that Global Tel*Link had shown claims 15 and 16 would have been obvious. Was the Board's Final Written Decision sufficiently detailed to allow for judicial review of this determination?

6. In arguing against Global Tel*Link's showing that claim 21 of the '167 patent would have been obvious, Securus raised the exact rebuttal argument that it raised for claim 15. The Board found that claim 21 would have been obvious based on the same prior-art teachings that it relied on for its finding that claim 15 would also have been obvious. Was it error for the Board to invoke its reasoning and analysis for claim 15 when it decided that claim 21 would also have been obvious?

## COUNTER-STATEMENT OF THE CASE

Securus correctly states that this appeal arises from a final written decision of the Board in an *inter partes* review that all claims of the '167 and '003 patents are unpatentable as obvious over U.S. Patent No. 7,505,406 ("Spadaro"). The remainder of Securus's statement of the case is an argumentative summary of the issues that Securus raises elsewhere in its Blue Brief. Global Tel*Link responds to Securus's factual assertions and merits arguments in the Counter-Statement of Facts and Argument sections of this brief.

## COUNTER-STATEMENT OF THE FACTS

Securus's statement of facts omits many facts material to this appeal and misstates other facts. This counter-statement of facts addresses Securus's errors and omissions.

## I. The '167 and '003 patent claim centralized prison communication systems that use Voice over Internet Protocol (VoIP).

The '167 and '003 patents are related and share a common specification. The claims of both patents are directed to communications services provided to prison facilities. Specifically, the '167 patent is directed to "a centralized architecture for call processing" utilizing Voice over Internet Protocol (VoIP). (Appx4; Appx85; Appx167 at 1:38–40; Appx183, 3:18–19.) In a "centralized" communication system, various call processing functionality is consolidated at a location that is remote from the multiple local facilities to which service is provided.

4

The parties agree that the claims of the two patents are the same in all respects that are material to the issues in this appeal. The independent claims of both patents recite several centralized components of a prison call processing system, a "networking device," a "call application management system"; and an "unauthorized call activity detection system." [1] (Appx175, claim 1; Appx190–91, claim 1.) Of relevance to this appeal, the claims further require that an "unauthorized call activity detection system" and a "call application management system" are either co-located with (as in the '167 patent) or connected via LAN to (as in the '003 patent) a "networking device" that is remote from the prison sites.

Claims 9, 15, 16, and 21 of the '167 patent are also the subject of this appeal, but their claim language is not relevant because Securus is not substantively challenging whether the Board erred in finding that those claims would have been obvious. Instead, Securus is only arguing that the Board's obviousness analysis is not sufficiently detailed to allow for judicial review. (Blue Br. 39–42.)

---

[1] The patents also recite other systems components. The '167 patent recites a billing system co-located with the networking device and the '003 patent recites a validation system connection via the LAN to the networking device.

**II.    Before the time of the invention, VoIP Networks were well known in the art and centralized architectures had been widely implemented in telephone networks.**

The earliest possible filing date for the patents on appeal is August 15, 2003. By then VoIP networks were well known in the art. The first commercial VoIP product had been introduced in 1995. (Appx4221, ¶ 36; Appx6687, ¶ 36.) And by the end of the millennium, industry experts were expecting VoIP networks to carry over 10% of voice traffic by 2003. (*Id.*) Indeed, the particular VoIP architecture disclosed and claimed in the '167 and '003 patents was already being used by local carriers, such as Verizon, and long-distance carriers, such as MCI and Level 3. (Appx4221–22, ¶ 37; Appx6687–88, ¶ 37.)

Likewise, centralizing the network components of telecommunications systems was known and trending in the industry. By 1997, most local carriers had centralized their operational and administrative controls. (Appx4224, ¶ 42; Appx6690, ¶ 41.) This centralization made it possible to maintain the precision and stability required by the public switched network (PSTN). (*Id.*) In the PSTN there existed a number of standard centralized systems and databases, including CAROT, CATLAS, TIRKS TNDS, and EADAS, all of which were used more than two decades before the time of the invention. (Appx4224–25, ¶ 43; Appx6690–91, ¶ 42.) As another example, AT&T had centralized its long-distance network surveillance as early as 1962. (Appx4225, ¶ 44; Appx6691, ¶ 43.)

These centralized systems and centers had the advantage of aggregating data from multiple locations at a single point. (Appx4227, ¶ 46; Appx6693, ¶ 45.) Centralization also allowed for reduced costs and greater access to new functionality. (Appx4227, ¶ 47; Appx6693 ¶ 46.) For example, toll-free calling had become untenably costly when it was provided in a distributed fashion. (Appx4227–28, ¶ 48; Appx6693–94, ¶ 47.) AT&T addressed this problem by centralizing its toll-free services. (*Id*.) Likewise, the Advanced Intelligent Network allowed carriers to handle call processing at a central system instead of distributing it to the various switches. (Appx4228, ¶ 49; Appx6694–95, ¶ 48.) This allowed for the addition of features at a centralized point, instead of updating the network at each switch. (*Id*.)

Inmate communications systems followed this same trend. (Appx4229, ¶ 50; Appx6695, ¶ 49.) Inmate phone use was nearly non-existent until the 1970s, when payphones were installed throughout the federal prison system. (Appx4229–30, ¶ 50; Appx6695–96, ¶ 49.) Collect calling and coin-phone calling was typically handled by operator services switches that were centralized in the carrier network which handled calls from multiple prisons. (*Id*.) By the late 1980s, there was a movement away from solely using collect calling in prisons, and functionality was distributed to systems within the individual prisons. (Appx4229–30, ¶ 51; Appx6695–96, ¶ 50.) However, with the advent of widespread VoIP in the late

7

1990s, inmate communication systems again moved toward centralized

architectures. (Appx4230, ¶ 53; Appx6697, ¶ 52.)

## III. Prior-art Spadaro disclosed all of the claimed components of the patents on appeal and teaches (i) centralizing control functions, and (ii) using VoIP in a multi-prison communication system.

The main asserted prior-art reference, U.S Patent 7,505,406 to Spadaro,

taught all of the claimed components of the claimed systems and the key features

of the patents that are the focus of this appeal: centralizing the control functions of

a prison phone system to a remote location (Appx25 (citing Appx1371 at 4:4–10

and Appx1367, Figure 4); Appx106 (citing Appx1371 at 4:4–10 and Appx1367,

Figure 4)) and operating a multi-prison communication system over VoIP (Appx24

(citing Appx1371 at 3:58–62 and Appx1366, Figure 3); Appx105 (citing

Appx1371 at 3:58–62 and Appx1366, Figure 3); Appx1370 at 2:30–31; Appx1368,

Figure 5.)

As Securus points out in its Blue Brief, the Board found that Spadaro

discloses all of the components claimed in the two patents:

- The claimed "unauthorized call activity detection system" is taught or suggested by Spadaro's three-way call detect 30a;

- The claimed "call application management system" is taught or suggested by Spadaro's VoIP gateway 26a;

- The claimed "billing system" is taught or suggested by Spadaro's billing function 24;

- The claimed "validation system" is taught or suggested by Spadaro's PIN checking 28; and

- The claimed "networking device" is taught or suggested by Spadaro's server 48.

(Blue Br. 24 (citing Appx27 and Appx108–9).)

Spadaro also taught centralizing these components in a location remote from the prison and operating a multi-prison communication system over VoIP.

Spadaro's Figure 3 shows that inmate prison communications systems had adopted centralized architectures for call processing and that those architectures could be operated over a VoIP network in a multi-prison system. (Appx4232, ¶ 57; Appx6699, ¶ 56; Appx43-45; Appx1371 at 3:58–61.)



Spadaro's Figure 1 depicts a system in which a broad range of

9

call-processing functions such as routing, billing, pin checking, three-way call

detecting, and a VoIP transmission/reception are performed by a single computer,

residing at a single prison. (Appx1370 at 2:45–48; Appx1365, Figure 1;

Appx4233, ¶ 58; Appx6699, ¶ 57.)



FIG. 1

Spadaro teaches that the functions performed by this computer "may be

distributed to remote locations over the Ethernet network" and that doing so would

have the "advantage that these functions can be centralized with the function being

performed at the central office." (Appx1371 at 4:4–6; Appx43; Appx123–24;

Appx4233–34, ¶¶ 58–59; Appx6699–700, ¶¶ 57–58.) That centralized architecture

is shown in Figure 5 of Spadaro. (Appx4233–34, ¶¶ 58–59; Appx6699–700, ¶¶ 57–

58.)



Figure 5 illustrates centralizing functions remote from a single prison site, but Spadaro also teaches that the invention can be used in a state-wide prison and with thousands of phones dispersed among many prison sites. (Appx4234, ¶ 60; Appx6700, ¶ 59; Appx1371 at 3:61–64.)

Securus's Blue Brief misstates Spadaro's disclosures in several material respects.

### A.    *Contra* Securus, Spadaro teaches generally centralizing control components, not just centralizing the routing, billing, and checking PIN functions.

Securus's statement of facts repeatedly states that Spadaro only discloses centralizing the routing, billing, and PIN checking functions, but not also centralizing the other control components such as three-way call detect 30a and VoIP gateway 26a. (Blue Br. 17.) This is incorrect. Instead, as the Board found, Spadaro generally teaches that removing control components from the individual prison sites allows for centralization of those components. (Appx43–44; Appx123–

11

24.) Spadaro teaches remotely distributing components from the individual prison sites, including remotely distributing three-way call detect 30a and VoIP gateway 26a, and then explains that removing components from the prison allows them to be centralized. (Appx1371 at 4:4–14, 21–24; Appx47; Appx127.)

### B. *Contra* Securus, Spadaro does not teach that the three-way call detect 30a and VoIP gateway 26a should be physically separated from the other control functions.

Securus states that Spadaro teaches it is technically important and advantageous to separate the three-way call detect 30a and VoIP gateway 26a from the routing, billing, and checking PIN functions: "… it is important to separate these components due to the technical requirements of three-way call detect 30a and the characteristics of VoIP packets…. [Spadaro] illustrates the advantages of separating these functions from others such as three-way call detect 30a…." (Blue Br. 17 (citing Appx1371 at 4:25–35).) But the portion of Spadaro that Securus cites does not state either point, and, more importantly, Securus does not cite to any expert testimony explaining why a skilled artisan would have gleaned that information from Spadaro. Instead the cited portion of Spadaro—column 4, lines 25–35—simply teaches that the three-way call detect 30a should be placed outside the VoIP gateway 26a. It does not teach that the three-way call detect 30a and VoIP gateway 26a cannot be in the same location as the other control components is important or advantageous in any way.

### C.  *Contra* Securus, the presence of a WAN in Spadaro does not suggest physical separation of components.

Securus states that Spadaro's Figures 4 and 5 show that the three-way call detect 30a and VoIP gateway 26a are separated physically from Spadaro's routing 22, billing 24, and check PIN 28 because they are connected via a WAN, not a LAN. (Blue Br. 15–16; Appx1371 at 4:7–10; *Id.* at 4:49–51; Appx4379, ¶ 66; Appx6706, ¶ 66.) And Securus omits that its expert witness, Dr. Oliver, testified that devices connected by a WAN could be co-located in a single room:

> A: We're both connected to routers that are connected together over some type of WAN or LAN.
>
> Q. (BY MS. GORDON) Okay. And we're in the same room, correct?
>
> A. Correct.
>
> Q. Okay. So we're collocated right now?
>
> A. All depends on the term "collocated," but yeah, I would say in the same room is collocated.

(Appx4381, ¶ 68 (quoting Appx4502 at 109:8–21)); Appx9674, ¶ 66 (quoting Appx4502 at 109:8–21).)

Dr. Forys confirmed this when he testified that a WAN can connect two devices that are co-located. (Appx4380, ¶ 67.) And as Dr. Forys testified, "It would have been obvious to a person having ordinary skill in the art that call processing functions, such as three-way call detection and the VoIP gateway, could be included in the same device or provided by the same platform." (*Id.*)

13

### D.     *Contra* Securus, Spadaro's Server 48 would have been understood to intelligently route data.

Securus states that there is no evidence that Spadaro's Server 48 would have been understood to perform multi-path, or intelligent, routing. (Blue Br. 20–21.) But that is incorrect. Spadaro discloses that server 48 connects calls from multiple prison sites to the central office. (Appx1371, 3:55–56.) Spadaro also discloses that the system of Figure 3, which includes server 48, can be operated on a VoIP network. (Appx1371, 3:58–61.) In a multi-prison system, server 48 is required to route calls between the multiple prisons and the central location. (Appx4359, ¶ 32 (citing Appx1371 at 4:6–10 and Appx1366, Figure 3); Appx9653, ¶ 30 (citing Appx1371 at 4:6–10 and Appx1366, Figure 30.)) Specifically, Spadaro discloses that server 48 is responsible for call routing: "router 46 routes calls to a server 48" for outgoing calls, while server 48 would then route incoming calls to the correct router 46 so incoming calls reached the intended prison site. (Appx4360, ¶ 33 (citing Appx1371 at 3:51–61 and Appx1366, Figure 3); Appx9653–54 (citing Appx1371 at 3:51–61 and Appx1366, Figure 3).) GTL's expert witness, Dr. Forys, explained that based on these disclosures, the skilled artisan would have understood that server 48 would be used to route incoming and outgoing VoIP data packets in a multi-prison environment. (Appx4361, ¶ 35; Appx9654–55, ¶ 33.) The content of a packet (generic data or voice data) is irrelevant. Server 48 can route a packet to the proper destination regardless of the content.

14

**IV.    The Board found that Spadaro renders obvious the challenged claims of the '167 and '003 patents.**

Global Tel*Link, supported by expert-witness testimony, showed how Spadaro's teachings of centralized functionality, serving a single prison site, as depicted in Figure 5 would have been combined with Spadaro's teachings to serve multiple prison sites over a VoIP network. (Appx206–07 (citing to Appx4234, ¶ 60); Appx5610–11.) Global Tel*Link went so far as to show precisely how Spadaro's teachings would have been implemented in a communication system that met the claim limitations:



FIGURE A

(Appx208; Appx5611.)

Securus correctly states that the Board found that Spadaro alone, and in combination with two secondary references, rendered obvious the independent and

dependent claims of the patents on appeal. (Blue Br. 26.) But Securus's recounting of the Board's final written decisions is mistaken on several points.

### A.    *Contra* Securus, the Board found that Spadaro's server 48 receives outbound packets from the multiple prison sites.

Securus states that the Board did not make any finding that server 48 receives both incoming and outgoing VoIP packets: "Just like GTL, the Board determined that Spadaro's server 48 distributes packets *to multiple prison facilities*, but it made no finding regarding routing of data packets in the other direction—to the components of the centralized system." (Blue Br. 25 (emphasis in original).) Securus is wrong. ) The claims do not include, or require, the routing of any packets (including data packets) to the billing, validation, or three-way call detection components. Instead, the independent claims require that the "networking device" "collect outgoing Voice over Internet Protocol (VoIP) data packets" from the prison facilities (as in claim 1 of the '167 patent) or "receive outgoing Voice over Internet Protocol (VoIP) data packets from the prison facilities" (as in claim 1 of the '003 patent). The Board found that Spadaro would have taught these features to one of skill in the art:

> Therefore we determine that Spadaro's server 48 would have conveyed to one skilled in the art that it receives VoIP data packets *from multiples sites* located remotely from the server 48.

16

(Appx34 (emphasis added); Appx115 (emphasis added.) The Board thus found that Spadaro's centralized server 48 receives incoming VoIP packets from multiple prison sites.

### B.    *Contra* Securus, the patented claims did not motivate Dr. Forys's proposed combination.

Securus states that the patent claims, not the teachings of the prior art, motivated Dr. Forys's Spadaro combination: "When asked why he added server 48 but not the components surrounding it in Figure 3, GTL's expert explained that the patented claim motivated his decision…." (Blue Br. 20 (later quoting Appx4967, 181:11–19).) This is not correct. *First*, the Board has already considered and rejected Securus's arguments that Dr. Forys's proposed combination was driven by hindsight reconstruction. (Appx46–47; Appx127.) *Second*, Dr. Forys did not testify that he was motivated by the claim language in forming his opinions about the proposed Spadaro combination. Instead, just before the testimony that Securus quotes in its Blue Brief, Dr. Forys explained that his reasoning was motivated by Spadaro's disclosures:

> 1. "First, you start with Figure 3, and Figure 3 has server 48 in it, as you can see, feed the central office." (Appx4966, 180:19–21.)
>
> 2. "Then you get Spadaro's comment, he says look, for efficiency and cost effectiveness you should connect 48 with the prisons using Voice

over IP, that says I need a Voice over IP Gateway at 48, so those two are connected." (Appx4966, 180:21–25.)

3. "Then you look at Figure 5, and Figure 5 shows a Voice over IP Gateway as part of the 3-way call detect. Well, that's the same Gateway, it has to be, why would it have two different gateways, right?" (Appx4967, 181:1–4.)

4. "So I said it makes logical sense now because you already have a Gateway with [server] 48 to couple it with the 3-way call detect and that Gateway, and the rest of Figure 5 follows because they're all centralized." (Appx4967, 181:5–9.)

*Third*, the testimony that Securus quotes in its Blue Brief is not an admission by Dr. Forys that the claim language motivated his analysis. Rather he merely explained that he omitted Spadaro's administrative workstation from the Spadaro combination because he did not want to clutter his opinions by including an unnecessary component: "I could have put it in, but I think the point was that I needed—the [server] 48 was the one that does the connections and things like that, administrative workstation, I don't know, I don't see how it necessarily provides me with the limitations of the claims. I try to—*I try to be economic in some of this*." (Appx4967, 181:13–19 (emphasis added).) Dr. Forys's testimony, which Securus

18

omitted, thus shows he did not rely on the patent claims when explaining his motivation to combine elements from Spadaro.

**C.     *Contra* Securus, the Board did not entirely ignore a limitation of claim 9.**

Securus states that "the Board ignored a claim limitation entirely" because the Board "did not make any findings or cite any evidence related to…the requirement that the call treatment system be connected to a validation system" in its analysis of claim 9. (Blue Brief, p. 27.) Securus omits from its Blue Brief that it did not even challenge whether Global Tel*Link had shown that the prior art disclosed the limitation requiring a connection before the validation system and the call treatment system. (Appx538; Appx470–71.) And Securus is mistaken about what the Board did in its Final Written Decision. There, the Board analyzed all of the limitations of claim 9 and cited Global Tel*Link's evidence showing that Spadaro taught connecting the call treatment system to the validation. (Appx71–72 (citing Appx4274–75, ¶ 137); Appx150 (citing Appx6737, ¶ 120).) The Board thus addressed every claim 9 element.

**D.     *Contra* Securus, the Board's obviousness rationale for claims 15 and 16 is not limited to a single sentence.**

Securus states that the entirety of the Board's rationale for finding obvious claims 15 and 16 of the '167 patent is contained in a single sentence. (Blue Br. 28.) That is not so. The Board's rationale goes beyond that. It found that "Spadaro

teaches 'least cost routing' is supported by the control computer." (Appx59 (citing Appx1371 at 3:19–21).) The Board then recounted Global Tel*Link's evidence that showed why the disclosure of least-cost routing would meet the limitations of claims 15 and 16. (Appx59.) The Board then addressed Petitioner's rebuttal case, including construing claim 16 to explain why Securus's rebuttal argument missed the mark. (Appx60.) Based on the claim language and the prior art's teachings, the Board found claims 15 and 16 would have been obvious. (Appx61.)

E.   **Securus omits from its Blue Brief that the Board's analysis of claim 21 referred back to its claim 15 analysis because Securus offered the same patentability arguments for claim 21 that it offered for claim 15.**

Securus concludes its statement of facts by pointing out that the Board's decision as to claim 21 of the '167 patent "simply refers back to its analysis of claim 15." (Blue Br. 28.) Securus fails to mention that its own rebuttal case for claim 21 only invoked its rebuttal for claim 15: "As noted above with respect to claim 15, Spadaro does not disclose such a selection of carrier networks from a centralized location…." (Appx479.)

## SUMMARY OF THE ARGUMENT

The Court should affirm the Board's Final Written Decisions finding unpatentable all claims of the '167 and '003 patents. Securus's Blue Brief presents no reason for this Court to do otherwise.

Securus's lead argument in this appeal is that the Board improperly placed the burden on Securus, not petitioner Global Tel*Link, to prove the claims of the challenged patents were patentable. But this is not so. The Board considered Global Tel*Link's evidence and found that it established unpatentability by a preponderance of the evidence. The supposed burden-shifting that Securus points to was nothing of the sort; instead, the Board merely explained why Securus's rebuttal case was not strong enough to overcome Global Tel*Link's proof.

What is more, even if the Board did place the burden on Securus, reversal is not the proper remedy, as Securus argues. Securus asserts that it submitted unrebutted evidence that the proposed obviousness combination would have been inoperable. But this is not so. Securus never argued inoperability; instead it argued that the prior art did not teach a function that Securus contended would have been necessary to meet the claim limitations. And Global Tel*Link submitted rebuttal evidence to this argument, which the Board has already considered and credited. Thus, even if the Board erred as Securus suggests, the error requires no remedy, or at most a remand.

Securus's second argument in this appeal, its only substantive one, asserts that there is not substantial evidence supporting a key fact finding by the Board. Here, Securus simply reargues its case. And it commits two basic legal errors. In arguing that there is not substantial evidence, it considered only the evidence cited

by the Board. But the substantial-evidence standard requires this Court to consider the "whole record" not just what the Board explicitly cited. 5 U.S.C. § 706. And Securus's substantial-evidence argument applies an overly rigid application of the prior art, restricting the art to its precise teachings while ignoring the creativity of the skilled artisan and the inferences to be drawn from the art. Setting aside these errors, the record below provides substantial evidence supporting all of the Board's fact findings.

Securus closes its Blue Brief with a third argument that the Board's Final Written Decisions are devoid of analysis to permit judicial review. The Court should reject this argument. The Board's decisions cited the relevant evidence, addressed Securus's rebuttal evidence and arguments, construed the claims where necessary, and outlined the reasoning underlying its ultimate decisions of obviousness. Nothing more is required of the Board.

## ARGUMENT

### I.    Standards of review.

The parties agree that obviousness is a legal determination based on underlying fact findings. *In re Mettke*, 570 F. 3d 1356, 1358 (Fed. Cir. 2009). (Blue Br. 29.) And the parties agree that these underlying fact findings are reviewed under the substantial-evidence standard of review. The substantial-evidence standard asks "whether a reasonable fact finder could have arrived at the

22

agency's decision." *In re Gartside,* 203 F.3d 1305, 1312 (2000) (citing

*Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). Substantial evidence,

however, is not limited to the evidence cited by the Board for its fact findings.

Instead the record as a whole is considered. *Id*. (citing *Universal Camera Corp. v.

NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 95 L.Ed. 456 (1951). "[T]he

possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's finding from being supported by substantial

evidence." *See Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct.

1018, 16 L.Ed.2d 131 (1966).

## II.    The Board did not shift the burden to Securus or require it to prove non-obviousness.

The Board did not shift the burden on the obviousness question to Securus.

Instead, the Board properly considered Global Tel*Link's obviousness evidence,

weighing that evidence against Securus's rebuttal evidence, and found Global

Tel*Link's evidence was more persuasive. There was nothing unusual or improper

about the Board's factual determinations in this case.

Even assuming that the Board did shift the burden to Securus, reversal is not

the proper remedy. Securus is incorrect that there is no evidence Spadaro's server

48 could not perform intelligent packet routing, as Securus posits would be

required in a VoIP system. There was substantial competing evidence on this

question and the Board has already found in Global Tel*Link's favor on this issue.

23

**A.    The Board weighed all of the evidence on the obviousness question and found that Global Tel\*Link had proven that the challenged claims would have been obvious by a preponderance of the evidence.**

Securus's burden-shifting argument hangs on two sentences from the Board's decisions. (Blue Br. 30–31 (quoting Appx36, Appx38 and Appx117, 119).) Both of these sentences fall in the section of the final written decisions that resolved the parties' dispute whether Spadaro's server 48 (the proposed claimed "networking device") would have been understood to perform the claimed functions of receiving outgoing VoIP packets from the prison site and distributing incoming VoIP packets to the prison sites. (Appx36; Appx117.)

The Board first considered the evidence and found that Global Tel\*Link had proven that Spadaro's server 48 met these claimed functions by a preponderance of the evidence:

> Therefore, we determine that Spadaro's server 48 would have conveyed to one skilled in the art that it received VoIP data packets from multiple sites located remotely from server 48. Accordingly, we agree with Petitioner's, which is supported by Dr. Forys' testimony, that "VoIP packets are collected by the server 48 and directed to their destinations."

(Appx34; Appx115.)

* * * *

> We also agree with Petitioner, with support from its declarant Dr. Forys, that Spadaro's server 48 performs the corollary function of distributing incoming VoIP packets to the prison sites.

24

(Appx36 (citing Appx210 and Appx4219–20, ¶ 33); Appx115–116.) Then, in the

sentences relied on by Securus, the Board explained why Securus had failed to

*rebut* Global Tel*Link's showing.

In the sentence that Securus points to first, the Board explained that Securus

had not presented evidence that the proposed Spadaro combination was beyond the

level of skill in the art or would not have yielded predictable results:

> Patent Owner has not provided sufficient argument or evidence that
> using Spadaro's server 48 to receive and distribute VoIP data packets
> in the Petitioner's proposed combination would have been beyond the
> level of ordinary skill or would not yield predictable results.

(Blue Br. 30–31 (quoting Appx36 and Appx117).) As for the second sentence,

Securus argues that the Board required Securus to show the proposed modification

"would not have been an inherent part of the modified system." (Blue Br. 31

(citing Appx38 and Appx119).) But that is not what the Board did. Instead, the

Board stated the reasons why it found unpersuasive a particular aspect of Securus's

rebuttal case. (Appx37–38; Appx119.) Securus had argued that server 48 would

need to perform intelligent routing of calls based on the content (voice or data) of

those calls given the location of server 48 that Global Tel*Link had proposed in its

combination. (Appx457; Appx5975–76.) Global Tel*Link specifically addressed

that argument, including presenting expert testimony that server 48 would have

been able to route packets to the appropriate destination. (Appx576; Appx4361,

¶ 35.) The Board rejected Securus's rebuttal argument, explaining it was

unpersuaded that intelligent packet routing would not be part of any VoIP system, which Spadaro disclosed: "Patent Owner has not persuaded us that such intelligent packet routing would not be an inherent part of any VoIP system…." (Appx38.)

In short, the parts of record that Securus points to show that the Board was doing as it must: weighing all of the evidence and deciding whether Global Tel*Link had shown obviousness by a preponderance of the evidence. There was no burden shifting.

### B.    Assuming arguendo the Board shifted the burden to Securus to prove non-obviousness, reversal is not the correct remedy.

If the Court finds that the Board did not improperly require Securus to prove nonobviousness, then the Court does not have to address Securus's argument that reversal is the correct remedy. In any event, reversal is not warranted. Securus contends that reversal is appropriate because Global Tel*Link did not present substantial evidence rebutting Securus's argument that the proposed combination would have been inoperable. But Securus is wrong on both counts: it did not argue inoperability below, and Global Tel*Link presented ample evidence that the proposed combination would have worked as claimed, which evidence the Board has already credited.

### 1. Securus did not argue or present evidence that the proposed Spadaro combination was inoperable.

Securus did not argue that Global Tel*Link's proposed combination would have been inoperable. The word "inoperable" does not appear in Securus's Patent Owner Response. Securus did not cite any authority for a point of law concerning inoperability. And Securus's expert did not opine that the proposed combination would have been inoperable. (Appx4698–99, ¶ 223; Appx457; Appx10129–130, ¶ 222; Appx5975–76. Instead Securus argued that there was a gap in Global Tel*Link's evidence: According to Securus, Spadaro's server 48 must intelligently route data packets coming from the prison sites to the correct centralized system but Global Tel*Link's expert had failed to explain how server 48 could perform this function. (*Id.*) That is, Securus argued that Global Tel*Link, and its expert, had failed to show how server 48 could perform intelligent packet routing  It did not argue inoperability.

### 2. Global Tel*Link, supported by expert testimony, showed how Spadaro's server 48 could perform intelligent packet routing.

Global Tel*Link presented ample evidence in the IPRs that Spadaro's server 48 could perform the intelligent packet routing that Securus contended was necessary for the proposed combination. (Appx576; Appx4361, ¶ 35; Appx5858–59; Appx9654–55, ¶ 33.) Specifically, Global Tel*Link pointed out that Spadaro shows that server 48 acts as a gateway to multiple sites. (*Id*.) And it presented

27

expert testimony that a skilled artisan would have known that server 48 therefore collects outgoing VoIP data packets associated with prison calls from a plurality of prisons. (*Id*.) Expert testimony also supported the fact that because server 48 serves multiple sites, server 48 must be able to route and distribute incoming packets to the correct site among the multiple sites. (*Id*.) In Dr. Forys's words, "Spadaro discloses that server 48 is the element responsible for performing this call routing: 'router 46 routes calls to the server 48' for outgoing calls, while server 48 would therefore route calls to the appropriate router 46 for incoming calls. (Appx4360, ¶ 33 (quoting and citing Appx1371 at 3:51–61 and Appx1366, Figure 3); Appx9653–54 (quoting and citing Appx1371 at 3:51–61 and Appx1366, Figure 3).) What is more, the Board has already credited this evidence. (Appx120.)[2] Because Global Tel*Link presented substantial evidence on this issue and because the Board decided this issue in Global Tel*Link's favor, reversal is inappropriate, and there is no need even for a remand.

### III. Substantial evidence supports the Board's finding that Spadaro rendered obvious the claimed "call application management system" and the claimed "unauthorized call detection system."

Securus broadly frames its no-substantial-evidence challenge to the Board's obviousness determination as a general failure by Spadaro to teach centralizing the

---

[2] The Board made this finding in the case involving the '003 patent but not the '167 patent. But identical evidence and arguments were presented on this point in both IPRs.

system components. (Blue Br. 34, "The Board erred in finding that Spadaro renders obvious a centralized call processing system having all call processing components co-located or connected together via a LAN.") In fact, Securus recognizes that Spadaro explicitly teaches centralizing many components: Spadaro "only teaches that Spadaro's routing, billing, and PIN checking functions can be centralized—exactly as shown in Figures 4 and 5." (Blue Br. 35-36.) Securus's precise complaint here is that there is no substantial evidence that Spadaro's VoIP gateway 26a (the claimed "call application management system") and Spadaro's three-way call detect 30a (the claimed "unauthorized call detection system") would be centralized with the other centralized components taught by Spadaro.

Securus's argument is mistaken. First, Securus's brief fails to contend with the substantial evidence in that record supporting the finding, a skilled artisan would have centralized (remote from the prison sites) Spadaro's VoIP gateway 26a and its three-way call detection. Second, Securus's brief reflects an over-rigid reading of the prior art that only takes account of Spadaro's explicit disclosures— in Securus's words "exactly as shown in Figures 4 and 5"—while failing to consider the ordinary creativity of the skilled artisan and flexibility mandated by *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).

The Court should affirm the Board's obviousness findings.

**A.    Securus's substantial-evidence argument is legally flawed because it improperly limits the inquiry to evidence explicitly cited by the Board and it applies an overly rigid approach that is inconsistent with *KSR*.**

Securus's substantial-evidence argument is legally flawed for two reasons. First, Securus focuses solely on the evidence cited by the Board in its Final Written Decisions. That focus is too narrow, however, because the substantial-evidence standard of review considers all of the record evidence, not just the evidence cited by the Board. The Administrative Procedure Act says as much: "…the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S. Code § 706. And the leading decisions on this question support this point. *Universal Camera*, 340 U.S. at 487–88; *In re Gartside*, 203 F.3d at 1312 ("the Court has emphasized that "substantial evidence" review involves examination of the record *as a whole*…").

Second, Securus's obviousness argument is inconsistent with *KSR v. Teleflex* because Securus seeks to limit the application of Spadaro to its precise teachings and ignore the inferences and creative steps that skilled artisan would use. *See e.g. In re Translogic Tech., Inc.* 504, F.3d. 1249, 1262 (Fed. Cir. 2007) In particular, Securus tries to limit Spadaro to precise teaching to centralize the billing, routing, and PIN checking, while ignoring the inference that the skilled artisan would draw from Spadaro that distributing components remote from the prisons allows for

centralization, a benefit to be had by any component. (Appx47–48; Appx127–28.)
We explain that evidence in detail.

### B. Substantial evidence supports the Board's finding that centralizing Spadaro's three-way call detection 30a system and VoIP gateway 26a with the other control components would have been obvious.

Substantial evidence supports the Board's finding "that Spadaro would have conveyed to one of ordinary skill in the art the required co-location." (Appx43; Appx135–36.)

By the time of the earliest filing date of the patents on appeal, centralized architectures of telecommunication systems were the trend. (Appx4223, ¶ 40; Appx6689–90, ¶ 39.) *See supra,* p. 6. Spadaro itself taught centralization in the context of prison-telephone systems. (Appx4390–91, ¶¶ 81–82; Appx9684, ¶¶ 80–81.) Spadaro's Figure 3 shows that inmate prison communications systems had adopted centralized architectures for call processing and that those architectures could be operated over a VoIP network. (Appx4232–33, ¶ 57; Appx6699, ¶ 56; Appx43; Appx1371 at 3:58–61.) And Spadaro's centralized architecture of Figure 3 could be used with Spadaro's other VoIP embodiments. (*Id.*)

Spadaro's Figure 1 also depicts a system in which a broad range of call-processing functions such as routing, billing, pin checking, three-way call detecting, and a VoIP transmission/reception are performed by a single computer,

residing at a single prison. (Appx1370 at 2:45–48; Appx1365, Figure 1;

Appx4233, ¶ 58; Appx6699, ¶ 57.)



(Appx1365, Figure 1.)

Spadaro teaches that the functions performed by this computer "may be

distributed to remote locations over the Ethernet network" and that doing so would

have the "advantage that these functions can be centralized with the function being

performed at the central office." (Appx1371 at 4:4–6; Appx43; Appx4233–34,

¶¶ 58–59; Appx6699–700, ¶¶ 57–58.) That centralized architecture is shown in

Figure 5 of Spadaro. (*Id*.)

32



(Appx1368, Figure 5.)

Figure 5 illustrates centralizing functions remote from a single prison site, but Spadaro also teaches that the invention can be used in a state-wide prison and with thousands of phones dispersed among many prison sites. (Appx4234, ¶ 59; Appx6700, ¶ 58; Appx1371 at 3:61–64.) Figure A annotated below depicts how the architecture of Figure 5 could be used to serve multiple prison sites.



**FIGURE A**

(Appx4235; Appx6703.)

In its Patent Owner Response, Securus presented several arguments rebutting those set forth by Global Tel*Link's showing that it would have been obvious to centralize Spadaro's three-way call detect, VoIP gateway 26a, routing, billing, and PIN Check functions with Server 48. (Appx457–462; Appx5796–801.) Supported by expert-witness testimony, Global Tel*Link addressed all of Securus's counter arguments. (Appx577–583 (citing Appx4231–4234, ¶¶ 56–59);

34

Appx5866; Appx4359, ¶ 32; Appx9653, ¶ 30; Appx4264–65, ¶ 118; Appx4367,

¶ 46; Appx9660, ¶ 44; Appx4371–72, ¶ 54; Appx9665, ¶ 53;  Appx4384, ¶ 72;

Appx9677, ¶ 70.) Ultimately, the Board considered all of Securus's counter

arguments, weighed the competing evidence, and found Global Tel*Link's

evidence was more persuasive: "we credit Dr. Forys' testimony over that of Dr.

Olivier, because Dr. Forys' testimony better comports with the evidence of

Spadaro's disclosure that control functions … may be distributed to remote

locations and the advantages of centralization. (Appx45.)

The Board's finding that Spadaro would have taught centralizing the three-

way call 30a and VoIP gateway 26a to detect Spadaro's other centralized

components was supported by substantial evidence. The Court should affirm.

**IV.**  **The Board's Final Written Decision allows for effective judicial review
of its finding that claims 9, 15, 16, and 21 of the '167 patent would have
been obvious because the decision shows the evidence relied on and
outlines the Board's reasoning.**

While the Board must provide logical and rational reasons for its decisions–

–generally findings of facts, conclusions, and the reasons therefor—there is no

requirement for the Board to address all arguments raised or to explain all reasons

supporting its conclusion. *Synopsys, Inc. v. Mentor Graphics Corp.*, Nos. 2014-

1516 and 2014-1530 (Fed. Cir. Feb. 10, 2016). Securus incorrectly argues that the

Board's obviousness decisions as to the claims 9, 15, 16, and 21 fails to meet these

requirements.

35

The Board's decision for these claims outlines the Board's fact findings and

its conclusions and explains why the Board found these claims were obvious.

### Claim 9

Claim 9, which depends from claim 7 and indirectly from claim 1 recites:

> The system of claim 7 further comprising a call treatment system co-located with said call application management system and located remotely from the call processing gateways, the call treatment system connected to the validation system for communicating with a signaling network of said first telephone carrier network to determine whether a call forwarding feature is activated for call numbers associated with the calls.

Securus limited its Patent Owner Response for claim 9 to two discrete

rebuttal points: Securus argued that Hodge (the secondary reference) failed to teach

the claimed validation system. (Appx470; Appx72.) And Securus argued that

Hodge failed to disclose signaling, indicating "whether a call forwarding feature is

activated for call numbers associated with the call." (*Id*.)

The Board addressed both rebuttal points. It dismissed Securus's first

rebuttal point because Global Tel*Link cited Spadaro, not Hodge, for the claimed

validation system.[3] (Appx72.) The Board then found that Securus's missing-

element argument failed to consider the teachings that Hodge would have

---

[3] Indeed, the Board decided that the validation system, claimed in claim 7, was met by Spadaro, and Securus does not challenge the sufficiency of the Board's decision for claim 7.

suggested to a skilled artisan. (Appx72–73). Having recounted Global Tel*Link's evidence, the Board credited the testimony of Global Tel*Link's expert: "we credit Dr. Forys' testimony that one of ordinary skill in the art would place Hodge's call forwarding detection means at the central administration location of Spadaro…." (*Id*.) The Board further found that the electrical arts are predictable and found that Global Tel*Link had met its burden to show the combination of Spadaro and Hodges rendered obvious claim 9, because Global Tel*Link had shown (i) Spadaro and Hodge address the same problem of controlling and managing inmate communications; and (ii) the combination of the two references involved known methods with predictable results. (Appx77.)

That is, the Board made the necessary fact findings and legal conclusions, addressed both of Securus's rebuttal arguments, and sufficiently pointed to the evidence and reasons why claim 9 would have been obvious. The Board was not required to do more, and its decision provides sufficient detail for this Court to review any issue on appeal. Securus has not shown that the Board's decision lacked sufficient detail. The Court should affirm, not vacate, the Board's decision as to claim 9.

### Claims 15, 16, and 21

Securus raises a nearly identical argument for claims 15, 16, and 21. But as shown above, the Board's decision is more than enough to permit judicial review

37

of its obviousness rulings.

Claims 15, 16, and 21 recite similar features relating to routing calls to more than one telephone carrier network.

The Board found "Spadaro teaches 'least cost routing' [and] is supported by the control computer." (Appx59 (citing Appx1371 at 3:19–21).) The Board, pointing to Dr. Forys's opinions, further explained why this teaching taught the limitations of claims 15 and 16: Spadaro's least cost routing, or mixed mode, uses local access circuits to transport local calls and VoIP to transport higher cost long-distance calls. (Appx59.)

The Board then rejected Securus's rebuttal case for claim 15 because it hung on an incorrect claim-construction for "call processing," which the Board had analyzed at length and which Securus does not challenge here. (Appx60 ("Dr. Olivier, however, focuses on Spadaro's purported lack of call processing (*as defined by Patent Owner*) … which reduces the probative value…) (emphasis added).) In similar fashion, the Board rejected Securus's rebuttal argument for claim 16 because it relied on an implicitly over-narrow construction of the relevant claim term. (Appx60 (citing Appx595).) The Board then explained why Securus's implicit claim construction was incorrect: "The plain language of the claim requires…" (Appx60.)

The Board ultimately concluded its obviousness analysis for claims 15 and 16 finding that "Spadaro [disclosed] mixed mode in which local access circuits transport local calls at lower rates while VoIP transports higher cost long distance calls" met the "plain language of the claim," which the Board had just construed. In short, the Board construed the claims, established what the art disclosed, outlined the evidence relied upon and its reasoning for both claims, and concluded the claims were obvious. Nothing more is required.

Securus finally criticizes the Board's decision for claim 21 because that decision invoked the reasoning for claim 15. But Securus omits that the parties had presented the same evidence and arguments for claim 21 that it presented for claim 15. (Appx63 ("Patent Owner relies on the same arguments made in connection with claim 15").) The Board explained "when we balance Spadaro's express disclosure of mixed mode (Appx1371 at 4:56–61) against Patent Owner's assertions, we determine that a preponderance of the evidence supports Petitioner's position that claim 21 would have been obvious over Spadaro." (Appx64.) Because the Board's decision on claim 15 provided a sufficient basis for judicial review, and because Securus rests on its argument for claim 15, this Court should affirm, not vacate, the Board's ruling that claim 21 would have been obvious.

## CONCLUSION AND RELIEF SOUGHT

Global Tel*Link generally requests that the Court affirm the Board's rulings that the claims of the '167 and '003 patents would have been obvious. In particular, Global Tel*Link requests:

1.   that the Court find that the Board did not place the burden on Securus to prove its claims were patentable;

2.   if the Court finds the Board improperly placed the burden on Securus, (i) the Court should nevertheless affirm because Global Tel*Link presented substantial evidence that server 48 would have been understood to perform intelligent packet routing, which evidence the Board has already decided in Global Tel*Link's favor, or (ii) if the Court decides affirmance is not appropriate, it should remand this case for the Board to make fact findings in the first instance;

3.   the Court should find that substantial evidence supports the Board's obviousness rulings and affirm those rulings; and

4.   the Court should find that the Board's Final Written Decisions as to claims 9, 15, 16, and 21 of the '167 are sufficient to allow for judicial review and affirm them.

Dated: May 16, 2016

Respectfully submitted,

/s/  Byron L. Pickard
Byron L. Pickard
Lori A. Gordon
Michael B. Ray
Michael D. Specht
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Avenue, NW
Washington, DC 20005
202.371.2600

*Counsel for Appellee,*
*Global Tel Link Corporation*

## CERTIFICATE OF SERVICE

I, Byron L. Pickard, hereby certify that a copy of **BRIEF OF APPELLEE GLOBAL TEL\*LINK CORPORATION** was served by electronic mail via the CM/ECF system, addressed to:

Erika H. Arner
Daniel C. Tucker
FINNEGAN, HENDERSON, FARABOW,
BARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, VA  20190-5675
erika.arner@finnegan.com
daniel.tucker@finnergan.com

Attorneys for Appellant
Securus Technologies, Inc.

Dated: May 16, 2016                     Respectfully submitted,

                                         /s/ Byron L. Pickard
                                        Byron L. Pickard
                                        **Sterne Kessler Goldstein & Fox PLLC**
                                        1100 New York Ave., N.W.
                                        Washington, DC 20005
                                        202.371.2600

                                        *Counsel for Appellee,*
                                        *Global Tel\*Link Corporation*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 8,189 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2010 in 14 point Times New Roman.

 /s/ Byron L. Pickard
Byron L. Pickard
*Counsel for Appellee*
May 16, 2016